UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MATTHEW R., :
      Plaintiff, :
       :
      v. :   C.A. No. 24-231MSM
       :
FRANK BISIGNANO, :
Commissioner of the Social Security :
Administration, :
      Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On November 3, 2021, Plaintiff Matthew R., a "younger" individual, filed his fourth application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Tr. 14, 76. Plaintiff has a GED and has worked mostly short term at many jobs (including during the current period of alleged disability), principally at restaurants as a dishwasher and occasionally a cook's helper. Tr. 16, 25, 225-29, 233, 237. Plaintiff has long been diagnosed with bipolar disorder and alcohol abuse, as well as substance use disorder (marijuana); his history includes one certified four-day psychiatric hospitalization in 2007, residential treatment for detoxification in 2016 and 2017 and occasional criminal charges for assault, generally domestic incidents involving his mother with whom he lives. Tr. 22, 71, 86, 608, 620-34.

Claiming onset of disability on March 1, 2020, with a date-last-insured of December 21, 2025, Plaintiff's application alleges that he has been disabled by "bipolar, manic depressive, ADHD, asthma, torn left knee and anxiety." Tr. 241, 252. At Step Two, an administrative law judge ("ALJ") agreed that depressive/bipolar disorder, anxiety disorder, impulse control disorder and substance addiction disorder are all severe impairments, but that Plaintiff's physical

conditions (for example, asthma and hypertension) are non-severe. Tr. 17. Considering all of Plaintiff's symptoms, as well as the mostly persuasive administrative findings of the non-examining experts, the ALJ found that Plaintiff retains the RFC[1] physically to perform a full range of work at all exertional levels except for environmental limits, but that mentally he is limited to work involving simple instructions and tasks with only occasional interaction with the public, supervisors and coworkers, no tandem work with coworkers, no time-pressured tasks and only occasional changes in a routine work setting. Tr. 19. In reliance on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff was not disabled at any relevant time.

      Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner denying his SSI/DIB applications. ECF No. 9. Plaintiff contends that the ALJ erred in finding persuasive in part the findings of the non-examining psychologist – Dr. Jeffrey Hughes – at the initial phase and most of the findings of the non-examining expert psychiatrist – Dr. Susan Killenberg – at the reconsideration phase, but in rejecting as unpersuasive Dr. Killenberg's finding that "claimant will be prone to occasional irritable verbal outbursts with supervisors." Tr. 24. In addition, Plaintiff cites Sandra C. v. Saul, C.A. No. 18-375-JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019), adopted by text order (D.R.I. Sept. 16, 2019), and contends that the post-file review portion of the record contains evidence of "material worsening of symptoms," such that the findings of these non-examining experts do not amount to substantial evidence and the ALJ erred in relying on them at all. ECF No. 9 at 14-15. Apart from the rejected Killenberg finding that Plaintiff will have outbursts with supervisors, there is no medical opinion from any source supportive of greater limitations than those incorporated by the ALJ in her RFC.

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2

Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 11.  Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2020) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  If the Court concludes that the ALJ erred, it is empowered to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505.[2]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

### A.     The Five-Step Evaluation

---

[2] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 404.1520(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 404.1520(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

### B.  Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions and prior administrative medical findings by Social Security experts in the claimant's case record. 20 C.F.R. § 404.1520c; see 20 C.F.R. § 1513a(b)(1) ("our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). The most important factors to be considered when the Commissioner evaluates the persuasiveness of these medical opinions are supportability and consistency; these are usually the only factors the ALJ is required to articulate. Id. § 404.1520c(b)(2); Katheryn H. v. King, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at *3-4 (D.R.I. Feb. 18, 2025). Supportability "includes an assessment

5

of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

In considering whether and to what extent to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Smith v. Colvin, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *5 (D. Me. July 15, 2015). Nevertheless, if a portion of an expert opinion is rejected as less persuasive, the ALJ must state her reason, which must be based on substantial evidence of record. See 20 C.F.R. § 404.1520c(b). However, the ALJ's duty to "articulate how [she] considered the medical opinions and prior administrative medical findings" is not onerous. 20 C.F.R. § 404. 1520c(a); see Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024). In assessing the ALJ's articulation, the Court must remain mindful that its role is not to reweigh the evidence, even if it might have come to a different conclusion. See Thomas P., 2022 WL 92651, at *8.

Medical experts' opinions/findings/testimony is not substantial evidence and cannot be relied upon if the experts were not "'privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions.'" Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480

6

WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)) (alterations in original), adopted, 2020 WL 555186 (D.R.I. Feb. 4, 2020).  In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is materially different from what the expert found based on what he did see.  Virgen C., 2018 WL 4693954, at *3.  Thus, substantial evidence of material symptom worsening that the non-examining experts did not see requires remand.  Sandra C., 2019 WL 4127363, at *6.  If the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence," remand is necessary.  Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018); see Kayla G. v. Kijakazi, C.A. No. 21-443PAS, 2022 WL 3368600, at *2 (D.R.I. Aug. 16, 2022).

On the other hand, it is also well settled that an ALJ may rely on non-examining expert findings, despite post-file-review evidence, as long as the ALJ considered the post-file-review evidence and makes a commonsense finding that the pre-and post-file-review records are sufficiently similar such that the post-file review material does not to detract from the weight to be afforded to the expert findings.  Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6-7 (D.R.I. Sept. 16, 2020), adopted, 2020 WL 6487813 (D.R.I. Nov. 4, 2020); Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019), adopted by text order (D.R.I. Dec. 13, 2019).  To hold otherwise would render such opinions irrelevant because of the practical impossibility that such experts can be privy to updated medical records.  Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009).  It is well settled that this approach "would defy logic and be a formula for paralysis."  Id.  That is, expert/medical opinions may not be rejected as stale unless the claimant sustains his burden of demonstrating that the post-file-review evidence reveals a "sustained (and material) worsening"

of the claimant's impairments" that the ALJ ignored. Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6 (D.R.I. Sept. 16, 2020) (internal quotation marks omitted), adopted 2020 WL 6487813 (D.R.I. Nov. 4, 2020).

### III. Analysis and Recommendation

#### A. Dr. Killenberg's Prior Administrative Finding that Plaintiff is Prone to Irritable Verbal Outbursts with Supervisors

Plaintiff's challenge to the ALJ's RFC is principally focused on her rejection as not persuasive of Dr. Killenberg's finding that "claimant will be prone to occasional irritable verbal outbursts with supervisors." Tr. 24. To buttress this argument, Plaintiff attacks the ALJ's reasons for her determination.[3] Tr. 24, 91, 99. First, Plaintiff argues that the ALJ's reliance on the lack of record evidence documenting outbursts with supervisors impermissibly raised Plaintiff's burden of proof. Second, he challenges the ALJ's determination that the Killenberg supervision finding is unsupported by the record and inconsistent with the evidence as a whole because these reasons are meaningless "boilerplate" and are based on an improper lay analysis of the post-file review record. Plaintiff contends that the ample record evidence of his irritability and issues in getting along with people in general, and his mother in particular, affords sufficient support for Dr. Killenberg's finding of a particularized difficulty in getting along with supervisors. Importantly, this argument does not challenge the undisputed difficulties that limit Plaintiff's ability to interact with people in general, adversely impacting his social interactions

---

[3] Plaintiff also argues in passing that remand is required because the ALJ relied on the many provider reports that Plaintiff was "doing well" and had normal mental status examinations yet these providers also noted that Plaintiff was a poor historian and the ALJ herself found that Plaintiff's symptoms may not be accurately reported. This argument fails not only because it is undeveloped, Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021), but also because it overlooks that the provider assessments of the clinical significance of Plaintiff's subjective report of "doing well" and Plaintiff's mostly entirely normal mental status examinations are objective clinical findings, amounting to substantial evidence on which the ALJ may rely. See Steven A. v. O'Malley, C.A. No. 23-544-WES, 2024 WL 4344865, at *4 n.4 (D.R.I. Sept. 30, 2024), adopted by text order (D.R.I. Oct. 18, 2024).

with supervisors, coworkers and the public/customers; this limitation was accepted by the ALJ and incorporated in the RFC.

        1.        Pertinent Background

In 2007 (thirteen years before the alleged onset of disability in this case), Plaintiff was involuntarily hospitalized for several days due to a psychotic episode linked to the ingestion of alcohol and drugs and the lack of any mental health treatment; at intake, he reported his belief that family members were trying to kill him with their thoughts and that he argues with bosses, causing him to be fired from countless jobs; during his hospitalization, Plaintiff directed outbursts at other patients and at health care staff who tried to intervene. Tr. 428. These records also reflect improvement as Plaintiff began taking (apparently for the first time) psychiatric mediation in proper doses.[4] Tr. 432-33, 495-96. In 2016 and 2017 (three years or more before the alleged onset of disability in this case), Plaintiff was treated at Phoenix House for alcohol detoxification; these records reflect Plaintiff's conflict with his mother, including that there were domestic assault charges against the mother arising from incidents when both were intoxicated. Tr. 597-634. While the records for the 2007 involuntary hospitalization and the 2016/2017 alcohol detoxification were not submitted until after the non-examining file review was complete (so that the non-examining experts did not see them), there is a reference to both as relevant history in the files that Dr. Hughes and Dr. Killenberg did see. Tr. 378 ("Psychiatric Hospitalizations: 2007 at Newport Hospital/ Kent Hospital. Pt stated there were so many he

---

[4] The Commissioner appropriately notes that, after this hospitalization, Plaintiff was twice (in 2008 and again in 2014) found to be not disabled. Thus, this 2007 record cannot now be reevaluated or reweighed to support a different conclusion. See LaFave v. Comm'r of Soc. Sec., No. 7:16-cv-621(GTS), 2017 WL 4011264, at *9 (N.D.N.Y. Sept. 11, 2017) ("if the Agency found that the evidence prior to [the alleged onset date] did not support a finding of disability and the ALJ adjudicating the current application found no grounds to reopen the prior application, this Court is bound by those findings and may not now reevaluate that same evidence in search of a different conclusion").

9

cannot remember.  Residential: Substance Abuse: Adcare and Phoenix House.").[5]  The record seen by Dr. Hughes and Dr. Killenberg also reflects Plaintiff's history of involvement with the criminal justice system for assault and domestic violence, including that he was on probation for some of the period in issue and that at least some of his mental health care was court ordered.  Tr. 378-80.

In the portion of the file that the non-examining experts did see is Plaintiff's Function Report, in which he stated that he has problems getting along with others and that if someone "looks at me wrong [at work], I quit and move on," but not that his work had been adversely impacted by verbal outbursts directed at supervisors.  Tr. 267.  The Function Report also reflects Plaintiff's report that he is able to run errands and shop in stores.  Tr. 262-67.

These experts also saw most[6] of Plaintiff's relevant treating records at Thrive and Thundermist, which (as the ALJ found) focused on Plaintiff's difficulty in sticking with any job for an extended period and advert repeatedly to his reasons for leaving; as the ALJ correctly found, none of these include outbursts directed at supervisors.  See, e.g., Tr. 305 (left job because other workers would not wear masks), Tr. 375 (left job because seasonal).  Most of the mental status examination findings in the file seen by the non-examining experts include the observations that Plaintiff is cooperative, pleasant and displays no irritability, as well as that his mental health status was "stable."  E.g., Tr. 300, 311, 317, 351, 382.  Occasionally, providers noted that Plaintiff was irritable (once due to suspected ingestion of alcohol) or was having anxiety interfering with work (resulting in an adjustment of prescribed medication).  Tr. 323,

---

[5] The Commissioner points out that, despite these challenges in 2007, 2016 and 2017, Plaintiff was working with some recorded income in every year from 2005 to 2021.  Tr. 194.

[6] Plaintiff criticizes the ALJ's finding that the non-examining experts saw the "bulk" of this evidence.  I find no error in the use of "bulk" to describe this finding.  The file reviewed is 130 pages, while the Thrive/Thundermist material that came later amounts to less than seventy-five pages, some of which relates to non-severe blood pressure management.

348, 419. The records seen by the non-examining experts include providers' opinions that Plaintiff "does better and less irritability and anxiety when he is working and has structure to his day." Tr. 308. Regarding his ability to relate to supervisors, one provider noted that Plaintiff was "open to trying to take [work issue] to supervisor as/if issues occur rather than more abrupt means such as leaving job," Tr. 344, while another noted Plaintiff's report that he is "staying busy during the day, reaching out to his boss for work," Tr. 415. Finally, based on their file review, these experts were aware that Plaintiff was involved with the criminal justice system and had a history of domestic violence and assaultive behavior. Tr. 378-80.

Based on his expert review, the initial-phase psychologist, Dr. Hughes, opined that Plaintiff is socially limited in that he cannot perform work involving "frequent direct interaction with customers or coworkers," but that he "can accept supervision." Tr. 73, 81. On reconsideration, Dr. Killenberg noted that Plaintiff "feels angry, hostile, like everyone out to get me," that he has "held multiple jobs for short periods," but that he has had largely normal mental status examination observations. Tr. 88-90. For the most part, her findings (moderate limits in the ability to respond to coworkers, supervisors and the public) and her narrative explanation (despite provider observations that he is cooperative with normal behavior, he is "poorly suited to tasks that require sustained interpersonal contact"), align with those of Dr. Hughes, in that both opine that Plaintiff is limited by the inability to have sustained interaction with coworkers or the public/customers. Compare Tr. 73, 81, with Tr. 90-91, 99. However, her findings differ from Dr. Hughes' finding that Plaintiff "can accept supervision" in that she added the finding that Plaintiff "will be prone to occasional irritable verbal outbursts with supervisors."[7] Tr. 91, 99.

---

[7] The record reflects that there were no allegations of new or worsening symptoms between Dr. Hughes' file review and that performed by Dr. Killenberg. Tr. 86-88.

11

After the file review, Plaintiff continued treatment at Thrive and Thundermist, as well as at the Adult Correctional Institutions ("ACI") for a brief period based on his arrest following an argument with his mother. Consistent with the file seen by the non-examining experts, at the ACI, mental health providers noted normal mood and affect and cleared Plaintiff for the general population. Tr. 515-17. Also consistent with the pre-file-review record are the mental status observations and provider comments in this portion of the record. Tr. 523 ("doing well . . . denies irritability"); Tr. 535 ("doing well, anger under control . . . pleasant and cooperative"); 556 ("doing well . . . pleasant and cooperative"); Tr. 580 (PSYCH appropriate mood and affect, judgment intact, no suicidal ideations"); Tr. 594 ("feels [medications] are working well. . . . Behavior: cooperative . . . Mood: manageable, relaxed"). Also consistent with the pre-file-review record, Thrive and Thundermist providers noted occasional irritability when Plaintiff stopped or reduced medication, Tr. 526, 545, or anxiety when he seemed intoxicated. Tr. 541; see Tr. 582 ("gets anxiety when withdrawing from etoh") (cleaned up). In addition, pertinent to the functional impact of Plaintiff's social limitations is Plaintiff's hearing testimony that he can use public transportation, shops, goes out with friends, and that, when sober, he argues with family and friends "as everyone does"; he did not testify that his ability to sustain work was impacted by irritable verbal outbursts directed at supervisors. Tr. 41, 54, 56

In consideration of this record, the ALJ found Plaintiff significantly socially limited but adopted an RFC that falls between the finding of Dr. Hughes[8] ("can accept supervision") and that

---

[8] Plaintiff argues in passing that, unlike her analysis of the Killenberg finding regarding supervision, the ALJ did not articulate clearly why she found the Hughes opinion "persuasive in part." Tr. 23. When the ALJ's decision is read in its entirety, it is clear that the ALJ differed from the Hughes opinion in that she found Plaintiff somewhat more limited with respect to the ability to accept supervision ("able to occasionally interact with supervisors," Tr. 19) than is reflected in the Hughes finding ("can accept supervision," Tr. 73). In such circumstances, any error from the failure to articulate more specifically a reason for a finding of partial persuasiveness is harmless. See Morris v. Astrue, C.A. No. 11-625S, 2013 WL 1000326, at *16 (D.R.I. Feb. 1, 2013), adopted sub nom. Morris v. Colvin, 2013 WL 997132 (D.R.I. Mar. 13, 2013); see Wanda B. v. Saul, No. 2:18-CV-00341-DBH, 2019 WL 3317969, at *4 (D. Me. July 24, 2019), adopted, 2019 WL 3754207 (D. Me. Aug. 8, 2019) (remand not required when ALJ

of Dr. Killenberg ("prone to occasional irritable verbal outbursts with supervisors"). Thus, regarding supervision, the ALJ found that Plaintiff's RFC permits only "occasional[] interact[ion] with supervisors." Tr. 19. As reasons for this determination, the ALJ relied on the lack of record references that document outbursts with supervisors, as well as that the more extreme Killenberg finding is unsupported by the record and inconsistent with the evidence as a whole.

2. Analysis of Killenberg Finding Regarding Supervisors

For starters, there is no error in the ALJ's picking and choosing among portions of the expert opinions to make an RFC finding that is supported by substantial evidence. See Smith, 2015 WL 4391420, at *5. Thus, an ALJ's RFC does not have to exactly match the opinion of a medical expert because setting the claimant's RFC is reserved to the ALJ, not the medical experts. Wanda B. v. Saul, No. 2:18-cv-00341-DBH, 2019 WL 3317969, at *4 (D. Me. July 24, 2019), adopted, 2019 WL 3754207 (D. Me. Aug. 8, 2019). Accordingly, the ALJ's RFC determination of social limits that fall between those found by the two non-examining experts is not error as long as the reasons for rejecting the more limiting finding (of Dr. Killenberg) are consistent with law and supported by substantial evidence.

The Court may give short shrift to Plaintiff's argument that the ALJ's reliance on her own search of the record for affirmative evidence that Plaintiff's work experience has been marred by outbursts with supervisors as support for Dr. Killenberg's finding somehow impliedly subjected Plaintiff to a heightened burden of proof, effectively requiring him to produce vocational evidence, instead of relying on medical evidence. In this case, the ALJ's approach

---

properly discounts medical opinion evidence and assesses an RFC more favorable than remaining evidence might otherwise support); Yearling v. Colvin, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) ("[T]he ALJ did not commit reversible error in assigning [claimant] a more restrictive RFC.").

13

was appropriately grounded by her detailed analysis of the record, which is replete with medical provider notes and Plaintiff's statements regarding why Plaintiff was not able to sustain jobs for more than a short period.[9]  Tr. 20-23 (exhaustive survey of evidence focusing *inter alia* on statements by and attributable to Plaintiff about why he lost so many jobs).  In such circumstances, it is entirely proper for the ALJ to consider the absence of evidence that a claimed symptom (verbal outbursts directed at supervisors) impacted the ability to work to support a finding that there is no support for the proposition that such a symptom impacted the ability to work, over and above the impact of Plaintiff's undisputed difficulty in interacting with others.  See Rodriguez v. Colvin, No. CA 14-184 ML, 2015 WL 3631697, at *14 (D.R.I. June 10, 2015) (in record replete with evidence of claimant's thoughts and threats of hurting others, no error for ALJ to rely on absence of evidence to support finding that threats did not ripen into physical conflict); Anderson v. Astrue, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *11 (D. Me. Sept. 27, 2012) (in record replete with evidence of angry and rude outbursts, no error for ALJ to rely on absence of evidence that outbursts led to termination of employment), adopted, 2012 WL 5252259 (D. Me. Oct. 23, 2012), aff'd, No. 13-1001, 2013 WL 12590010 (1st Cir. June 7, 2013).  Thus, the ALJ's detailed analysis of this evidence makes plain that she did not import and apply an improperly high standard – effectively requiring Plaintiff to present affidavits from supervisors – in searching for support for the Killenberg finding.  See Richardson v. Saul, 565 F. Supp. 3d 154, 170 (D.N.H. 2021) (ALJ did not apply improper standard when decision includes

---

[9] Plaintiff contends (correctly) that the Social Security Act does not contemplate that evidence should be gathered from former employers, as a result of which this record has no direct evidence from supervisors; therefore, he reasons that it is error for the ALJ to rely on the absence of such evidence.  This argument misses the point.  The ALJ did not require Plaintiff to provide vocational documents and did not rely on the lack of statements directly from supervisors.  To the contrary, as the ALJ's decision confirms, she appropriately focused on the medical records in a case where virtually every provider clinically noted Plaintiff's statements about whether he was working, and if he was, what challenges he faced, why he lost jobs and how he might keep them.  Indeed, at least two such records affirmatively reflect that Plaintiff's ability to relate appropriately to supervisors was a strength.  See Tr. 344, 415.

detailed discussion consistent with appropriate standard). Accordingly, I find no error in the ALJ's reliance of the lack of any evidence of outbursts directed at supervisors during the period in issue as a reason why she found unpersuasive Dr. Killenberg's opinion that Plaintiff is prone to such outbursts. See Dumas v. Schweiker, 712 F. 2d 1545, 1553 (2d Cir. 1983).

Plaintiff's alternative argument more broadly challenges the ALJ's determination that the Killenberg finding that Plaintiff's ability to work is limited by his propensity for verbal outbursts directed at supervisors because it is not supported by the record and is inconsistent with the evidence. Plaintiff labels the ALJ's determination as "boilerplate" and effectively asks the Court to reweigh the post-file-review evidence to find that the Killenberg finding is both supported and consistent based on (1) treating records from the 2007 hospitalization for an alcohol/drug related psychotic episode, which reflect Plaintiff "yelling" and making outbursts directed to other patients and hospital staff, Tr. 495, 496; (2) a treating record from September 2022 noting Plaintiff's report that he was "back working at a country club but is having issues getting along wit[h] others," Tr. 545; and (3) a treating record from November 2022 noting Plaintiff's report of his arrest based on a misunderstanding with his mother (resulting in them "yelling" at each other), Tr. 549. Plaintiff contends that these incidents not only support the undisputed Hughes/Killenberg findings (which the ALJ adopted as an RFC limit) that Plaintiff struggles with interactions generally with coworkers, customers and the public, but also supports the more limiting Killenberg finding about supervisors because his mother is "directly analogous to a supervisor." ECF No. 9 at 13. In particular, Plaintiff asks the Court to find that outbursts directed at his mother support the proposition that Plaintiff would be limited due to his proneness to verbal outbursts directed to supervisors. He also presents the undeveloped[10] argument that the

---

[10] As noted infra, I reject Plaintiff's argument that it was error for the ALJ to find as a matter of commonsense that post-file-review treating records do not detract from the RFC because they are so complex that the ALJ needed a

15

post-file-review material amounts to complex medical evidence that defies the application of commonsense so that the ALJ engaged in an improper lay analysis in concluding that it affords no support for and is inconsistent with the Killenberg supervision finding.

The Court discerns no error in the ALJ's decision, which contains a detailed and accurate survey of the evidence of record, including that that Plaintiff's history of outbursts at anyone other than his mother were in the distant past and were related to drug/alcohol use that had significantly declined by the period is issue; that in the years preceding and during the period in issue, Plaintiff's discomfort in interacting with others in the work place did not result in outbursts at supervisors; that treating providers found that working benefited Plaintiff; that Plaintiff reported being able to shop and spend time with friends once a week; and that, in the current period, Plaintiff's mental health was noted as stable and he was consistently observed to be cooperative and/or pleasant with generally normal mood and only occasional irritability/anger. Tr. 18-23.

As to the comment Plaintiff made in 2022 about having issues with "others," the Court notes that it appears in a record that also reflects Plaintiff's report that he was "back to work at the country club," where he had worked previously, Tr. 545, while the record for Plaintiff's work a year prior at this seasonal job reflects Plaintiff's expression during a treatment discussion of his being "open to trying to take to supervisor" his work issues at the "golf club" as an alternative to abruptly leaving the job. Tr. 344. Thus, when read in context, the reference Plaintiff cites not only does not support his argument but is actually squarely inconsistent with Dr. Killenberg's finding that Plaintiff was limited by his proneness to making verbal outbursts at supervisors.

---

medical expert to opine whether they are materially different from the records with substantially similar findings that were reviewed by the non-examining experts. Put differently, having reviewed the records in issue, I do not find that the ALJ deployed an improper lay interpretation of inscrutably complex medical records.

16

Finally, the ALJ accurately acknowledges Plaintiff's "struggles with his mother who also drinks and that domestic incidents have occurred when his mother is drinking." Tr. 22. Far from supporting Dr. Killenberg's finding that Plaintiff is prone to outbursts directed at supervisors, the treating notes referenced by the ALJ also include Plaintiff's own statement that "his mother is the only one who can get him that angry." Tr. 577 (emphasis added). The Court also rejects this aspect of Plaintiff's argument because it would require the Court to engage in impermissible reweighing of the evidence. That is, to conclude that Plaintiff's relationship with his mother is sufficiently analogous to the employee/supervisor relationship so that conflict with her affords support for the challenged Killenberg finding amounts to factfinding to draw a conclusion that is not only (to this judicial officer) illogical, but also (and more importantly) would require the Court to go beyond what the law permits the Court to do. See Brown, 71 F. Supp. 2d at 30-31.

Based on the foregoing, far from being "boilerplate," as Plaintiff contends, the Court finds that the ALJ's determination that the challenged Killenberg finding is unpersuasive is amply supported by the substantial evidence that was laid out by the ALJ in her detailed analysis of the record. Shiebler v. O'Malley, Civil Action No. 24-10839-WGY, 2024 WL 5159737, at *10 (D. Mass. Dec. 17, 2024) (ALJ's summary description of relevant evidence is adequate support for ALJ's acceptance of some medical opinions and rejection of others); Julie D. v. O'Malley, C.A. No. 23-00182-WES, 2024 WL 208398, at *7-8 (D.R.I. Jan. 19, 2024) (court rejects plaintiff's challenge to ALJ's evaluation of record to make supportability and consistency findings as inappropriate request to reweigh evidence in manner more favorable to her), adopted by text order (Mar. 8, 2024). The Court further finds that the ALJ's approach to the findings of the non-examining experts, including the challenged Killenberg finding, is consistent with applicable law and well supported by substantial evidence. Having reviewed the record and

17

mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion," Burton v. Kijakazi, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023), I urge the Court to affirm the ALJ's well supported and legally correct decision. See Diane K. v. Kijakazi, C.A. No. 23-215WES, 2023 WL 8713695, at *7 (D.R.I. Dec. 18, 2023), adopted by text order (D.R.I. Jan. 23, 2024).

      B.        **Post-File-Review Records**

Plaintiff argues that ALJ erred in relying on the portions of the Hughes/Killenberg administrative findings that support her RFC because they are stale in that the record continued to develop. Specifically, Plaintiff contends that, with the addition of the pre-onset 2007 hospitalization record and the pre-onset 2016-2017 detoxification records, as well as the most recent records (2022-2023) reflecting *inter alia* Plaintiff's arrest following a "yelling" incident with his mother and ongoing treatment punctuated by occasional observations of irritability/anger, the post-file-review record reflects material worsening and requires remand to procure an expert's assessment of it.

I do not agree. The ALJ carefully reviewed these records as recited in her decision. Tr. 22-23. She appropriately marshalled her accurate and appropriate analysis of them to support her commonsense finding that they are additional support for, and do not detract from, her RFC. Id. Indeed, as the ALJ noted, these post-file review records confirm that Plaintiff had serious difficulties with alcohol in the distant past but in the present continued to do well, that he was generally drinking less and that the report of irritability/anger (including the disagreement with his mother who called the police) related to the failure to take medication (due to the pharmacy's failure to call him for the refill) and resolved with medication adjustment. Tr. 526-537; see Tr.

18

555 ("client reports he is doing well on his medication Feels his anger is under control Pleasant and cooperative"). Further, neither references to conflict with his mother nor occasional irritability/anger (associated with drinking or failing to take medication) amount to "material worsening"; rather, those are consistent with the record that was seen by the non-examining experts, as the ALJ's explication confirms. Thus, I find that this is not a case where remand is necessary because the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence." Mary K., 317 F. Supp. 3d at 668; Katherine P. v. Kijakazi, C.A. No. 21-427JJM, 2022 WL 3224851, at *5 (D.R.I. Aug. 10, 2022), adopted by text order (D.R.I. Aug. 25, 2022). Therefore, I recommend that the ALJ's reliance on these experts be affirmed. See Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

**IV.    Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED. Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN

United States Magistrate Judge
August 12, 2025